May it please the Court, I'm Paul Pericelli, and I'll be arguing on behalf of both appellants, Lehenbauer Farms, who was the owner of the property at issue, and MidAmerican Grain, who was the contractor engaged by Lehenbauer Farms. As the Court is aware, this case arises out of the design of a fairly complex and large grain processing facility at Lehenbauer Farms. After problems arose with the construction, Lehenbauer Farms terminated MidAmerican, and a lawsuit followed in which Lehenbauer alleged claim for negligence and breach of contract. As for the breach of contract claim, I do think it's significant to keep in mind that there is no allegation, for example, that MidAmerican failed to install or did install trip hazards that violated Section 25 of Design Spec G or something along those lines. There is no allegation like that because there were no design specifications. There was no written agreement. Fairly amazing, really, given the scope and cost of this facility, but nonetheless, that is the case. You know, that does jump out here in the case. Is there anything in the record that explains that? No, there really isn't, Your Honor. That's just the way that these folks did business up in Palmyra, and I think a lot of the way that folks do business up there in the farming community, there's a level of trust that is involved. And as a result of that, we're left with no written document, no design specifications, and the allegation that was made in the breach of contract claim, which admittedly was there, was that the contract included the implied duty to perform in a workmanlike manner and such that it was fit for land buyers' purposes. What this case really is, at the end of the day, is a negligence case because of the lack of a written agreement. That's really the nature and gist of the contract aspect of the case. American Family moved for summary judgment on one issue, one defense to coverage, and that is whether there was an occurrence, the alleged numerous other defenses to coverage. And there has, as the Court is aware, been decades of litigation over the scope of the word occurrence in general liability policies, and amazingly, the case law does seem a little inconsistent or can appear muddy in its analysis, particularly when the courts are trying to reconcile one of the settled principles that we concede, and that is that a general liability policy is not a performance bond, trying to reconcile that with the fact that there are many cases upholding general liability coverage for contractors. The case law or the analysis doesn't have to be that muddy. There are bright-line rules that apply here. There are several of them, and all of which argue in favor of coverage in this case. First, the negligence of an insured is an occurrence under Missouri law. That was decided by this Court and many other courts, this Court in the Koch Engineering case back in 1996, where this Court said Missouri case law clearly holds that accidents resulting from the insured's negligent behavior fall within the definition of a contract. Second, it has to be conceded that liability policies were designed to protect insureds from damage to third-party property. That was held in the Mathis case in Missouri and many other cases. Third, the critical inquiry when analyzing whether there was an occurrence is whether the insured foresaw or expected the injury or damages. In that instance, the Court ought to keep in mind the Missouri Supreme Court's directive back in 1969 that there is a vast difference between an intended act and an intended result. For example, in the D.R. Sherry case, which is a case where the contractor built a home on soil and decided to work around it, essentially, and put piers under the home. The evidence in that case was that the contractor said, I thought I did what was necessary. I could have never foreseen with this peering that the home would have failed. A fourth settled principle is that pure breach of contract claims are not covered under general liability policies. We agree with that. The real issue becomes, I think, one of the issues this Court needs to look at is what does that mean? Our position is, and I think the case law bears it out, is what the courts mean when they say that a pure breach of contract case is not covered is that we're talking about contracts where the parties negotiate and spell out defined and detailed terms. Why? Because first, in that instance, the insured, the contractor in that case, would have understood and negotiated exactly what he was supposed to do and the ramifications and potentials if he didn't do it. In other words, the insured could see, if I don't follow design spec A, what the natural result of that failure would be. In the absence of design specifications and clear specifications under Missouri law, the re is a duty of implied care that arises. In effect, going back to what I was talking about earlier with the nature of the breach of contract case, in effect, if you don't spell it out, what you're really left with is a duty of care, a negligence claim on behalf of the insured. What it can't be, what it can't be, Your Honors, is what American family has argued, and that is the level of control of the insured. An insured is always in control of its own actions. If that's the standard, there will never and can never be general liability coverage for a general contractor or a subcontractor. It can't be, because the contractor always controls what it's doing. We also, we know this. Let me ask you, come at it a little bit differently. Would it be fair to say that Leigh and Bower's property damage claims all stem from Mid-America's allegedly shoddy workmanship in the construction here? Yes. Okay, so in that case, why wouldn't we follow the View Home Owners Association case that uses, it's the same language, the same CGL language that we have in this case, and it I think held no coverage for claims stemming from defective construction and substandard workmanship? Because in that case, it follows with what we are saying about what do the courts mean when they say that there is no coverage for a pure contract claim. In the View Home Owners case, the court was careful to mention that part of the problem was the association's quote displeasure that the work did not meet specifications. That's at page 732. So in that case, like in virtually every other case where there is not, where coverage was not found, the courts were careful to point out that the parties had negotiated and that the of the contract, and that's, I think, is key to the decisions, all of the decisions, where there was no coverage. And it can be contrasted, Your Honor, with the cases where there is coverage. In the other case that Judge Autry decided, the Republic Vanguard case, there an electrical contractor failed to properly install circuits in a home. There, very similar to this case, the insured, or the owner, alleged breach of contract and negligence against the contractor. The breach of contract claim, quoting from the case, was that the contractor failed to perform, or performed, I'm sorry, in an unworkmanlike and defective manner. And the allegation was the sort of general improper installation of staples and circuits. So in that case, along with the fact that the general contractor said, look, I never had any idea, I couldn't have expected or foreseen that my failure to install these circuits in a proper way or in a negligent way would have resulted in the complete destruction of the home, led to a finding of coverage. And it's essentially the same case that we have here, Your Honor, where we allege unworkmanlike performance. You have the undisputed and unrefuted affidavit testimony of Mr. Ayer, who says, I did what I always do. I performed like I always do. I made some changes. Yes, I did. I didn't always follow the manufacturer's recommendations. But that's the way I do business. And that's the way I've done it in the past. And I could never have expected that in doing that, that I would have resulted in a complete failure or the necessary replacement of all of the owner's property. That's, again, sort of like the D.R. Sherry case. Again, the home built on improperly compacted soil. There, the contractor said, yep, I know. I know I built this on soil. But I did what I always do. I mean, I'm improvising a little bit. But I put peers in. And I couldn't have foreseen, having proceeded like I did, that I would have resulted in a failure of the entire house. The Assurance v. Secura case, a Missouri Supreme Court case, another case where there is coverage for a contractor. In that case, a contractor subbed out the installation and glazing of windows. There were no written specifications. In other words, Assurance v. Secura, that's at 384 Southwest 3rd. There, the allegation was the sub failed to do proper pre-work inspections. And there was coverage. And the court in that case pointed out, after Secura said, look, I know they're only alleging negligence. But, Your Honor, this is really a breach of contract. They're just saying they didn't do their job right. And in that case, the Missouri Supreme Court was careful to state, quote, Secura has not pointed to any defined contractual specifications and duties that it contends the sub failed to perform. In other words, what we're really talking about here is a negligence case. The Spiritus case, which is a case out of the Eastern District of Missouri District Court, same sort of thing. There, the general contractor told the sub, go demolish this property. And the court in the opinion, charges failed to ignite. And in that case, obviously the demo work was obviously within the control of the subcontractor, if you're using American Families' approach. But nonetheless, there was coverage. And there, it turned on one of the other bright line tests for seeability. And the court said, here the parties have not provided an explanation for why several of the charges failed. But it is not disputed the plaintiff did not foresee or expect the demolition to go as it did. Koch Engineering, this court's case, where Monsanto engaged Koch to, similar to this case, design and supply the materials for the construction of a tower. I can't say and find anything in the opinion that indicates that there was a detailed specification or an allegation that there was a violation of a detailed specification. But again, obviously the contractor had control over its work, and yet this court found that there was coverage. So, I, and I'll talk about some of the cases where there wasn't coverage. But we have all, if you tick off the sort of test that everyone seems to agree on, the negligence of an insured, we allege negligence, the liability policies are designed to protect an insured from damage to third-party property. We allege that there has been damage to third-party property that of Landbauer Farms that was caused by the improper work. Did the insured foresee or could he foresee or expect the injury or damages? Again, the undisputed testimony by affidavit of Mr. Ayer was that he could not, that he followed his typical and usual way of working. And finally, were there specific design specifications? If you look at, for example, Hawkeye Security versus Davis, where it talks about the breach of defined contractual duties in accordance with their contract, and where they cite Mathis, where Mathis, which is one of the cases that everybody relies on, where Mathis says performance of the contract according to the terms specified therein was within the insured contractor's control and management, and its failure to perform cannot be described as undesigned or unexpected. And that gets back to what I was saying earlier. I think if the court reads the cases where there was no coverage, you'll find a similar line of thinking. That is, if the parties sit down, if they lay it out, and if they spell it out, then the contractor can't come in and say, well, gee, I couldn't have expected that, because they negotiated it. And he said what I would do in extraordinary detail, as you find in a lot of these commercial contexts. I see my time is up, and I'll reserve it for rebuttal. Good morning, Mr. Graham.  May it please the Court, I'm Philip Graham. I am counsel here today for the appellee, American Family Mutual Insurance Company. This is a case about the consequences of Mid-American's actions. And in this case, it's about, this is a poor workmanship case, is what this is. And the question for the court is whether poor workmanship, or shoddy workmanship, is an occurrence. Is it an accident? And we would suggest that no, it is not an accident, and thus not an occurrence under American Family's policy, for all of the reasons set forth in our brief and those that we'll argue here today. And we would request that the court recognize that Mid-American's workmanship is the only point of contention in this case. Mid-American designed the grain facility. Mid-American built the grain facility. There were no other third-party contractors or subcontractors involved. Mid-American was entirely in control of this project from beginning to its end. There is no question, there is no dispute about that. And that's important in this case. Despite the arguments by appellant, control over the work is central to this case, and it is important. Let me ask you this. Yes, sir. Would you agree, though, that Missouri case law seems to be going in the direction of foreseeability of the damages being a key question? No, not particularly. I think the Vue case is controlling. In the Vue case, you know, clearly... I forget what was the name of that case you're just citing. I'm sorry, Your Honor. What is the case you just cited? The case I just cited is Vue Homeowners Association versus the Burlington Insurance Company. And, you know, in that case, the court said that Vue as owner had control and management over the property during the renovation. This naturally included the ability to resolve any alleged construction deficiencies in the property, as well as to remediate substandard work. Because the ability to resolve these construction deficiencies was within the Vue's control and management, its failure to address them cannot be described as an undesigned or unexpected event. And thus, there was no accident and no occurrence. That's a Missouri Court of Appeals case, right? That's correct. It is. It is a Missouri Court of Appeals opinion. It's decided after D.R. Sherry. A motion to transfer to the Missouri Supreme Court was filed. Because D.R. Sherry has the standard I suggested, right? D.R. Sherry... Yes, D.R. Sherry discusses foreseeability. And Llewellyn. Correct. But D.R. Sherry is different from the facts of this case and doesn't apply, and here's why. D.R. Sherry, the general contractor who was the insurer whose coverage was an issue, there was no allegation in that case that the general contractor had engaged in any shoddy workmanship. There had only been the fortuitous and unforeseen sinking of the property after it was built on soil that was insufficient. There were no allegations or no indication at least in the opinion that the general contractor had been tasked with testing the soil, determining whether it was adequate, anything of that sort. That wasn't pleaded. And so there's really no allegation or indication of any shoddy workmanship by the general contractor in D.R. Sherry. And so in that case you get the result that you have been controlled the entire process, and there is not any allegation that anything outside of its control or purview caused Landbauer's damages here. I think if we look at the allegations of the amended counterclaims, which are in the joint appendix at 151 to 153, I think we can get a better picture. 151 to 163. In particular, the real specifics start on 152. For example, in paragraph 9 under the tower and leg section, Landbauer alleges that Mid American failed to follow Lamar Industries, industry leading provider of steel towers and related structures, drawings and best practices in construction of the tower and related structures, including without limitation. And then it lists, I think 17 or 18, 17 bases where Mid American failed to follow those specifications properly, including things like tightening bolts, failing to use proper welding rods that were called for by Lamar and otherwise. And if you go through the allegations of the amended counterclaim or the original counterclaim, you will see that that is in fact the type of allegations we have here are that Mid American failed to follow certain specifications and requirements. What is important here is that it is alleged beyond the control that Mid American had, is that a state-of-the-art grain facility. A state-of-the-art grain facility. And what apparently happened is they didn't deliver that. But the reason they didn't deliver that was purely and only its own fault in not living up to its contract obligations to deliver a state-of-the-art facility, both in the design and the build of the project. There wasn't anything outside of Mid American grain that is alleged to have caused this. There simply isn't. And for that reason we would suggest that the View Homeowners Association is the most current and complete up-to-date statement of Missouri law. And it is one that should guide the court in deciding this case. Hypothetically, let's say we were to disagree with that and rely on foreseeability, would the heirs affidavit make that a fact question? No, I don't think it does. I think it's a self-serving affidavit. This is a duty to defend case, not a duty to indemnify case. So we've got to look here at what the allegations were that are made in the underlying case. The allegations are very clear. These are are not unforeseeable. We know from experience if we engage in shoddy workmanship, we're going to or very likely to get a bad result. And so that's really what we have here. To cover, discuss some of the cases that counsel brought up, Republic Vanguard versus Central States Holdings, another decision of Judge Autry in December of 2018. In that case, I think the critical point in there is that for some reason the insurer conceded that the insurer did not foresee injury or harm from its work. So that's different from this case. We very much have not conceded that and do not agree with that. And I don't believe that decision also, even though it came out after VIEW, does not cite it. It does cite to D.R. Sherry, but does not discuss the VIEW decision. So it's different on its facts as well. Assurance Company of America versus Sakura, the counsel also brought up. There were no allegations of breach of contract in that case whatsoever. There were only allegations of negligence. And again, we had a situation where that contractor was not in control of the entire project. That was a window installer who installed windows in a building envelope. Let me ask this question. Yes, Your Honor. The policy term that we're trying to construe is occurrence. I'm sorry, occurrence, yes, sir. Occurrence, correct? Correct. And in Missouri, occurrence, the cases say that occurrence means accident. Correct. Okay. Is it possible to accidentally do shoddy work? No. Not if you are in control of the entire project and you're designing and you're building it. You are in control of your work. You may not want to do shoddy work. You may not like it that you've done shoddy work. But at the end of the day, if I am involved in building the project from start to finish, both design and build, then that contractor cannot accidentally engage in shoddy work. And I think the Missouri cases have more or less determined that. And that's what we talk about really in the context of Mathis and the other cases that speak in terms of pure breach of contract cases. We're talking about cases where we're only really focused on the workmanship of the insured. Where I think if you really drill down on these cases, and I think they're pretty consistent, where there's a finding that the general contractor should be covered, there was an occurrence, you've often got something outside of the contractor occurring. Either the conduct of a subcontractor, something else unforeseen in terms of the soil in the D.R. Sherry case. You have the failure of the subcontractor doing the demolition of the Spertus case. In addition to the fact that that's a demolition case and it did not appear that anyone alleged there had been shoddy workmanship. There'd just been an unexplained failure of all the charges to detonate. So those cases are different. Those cases are very different from this case in which the plaintiff clearly, Landauer Farms, clearly pleaded the failure to comply with some very specific specifications and requirements that it was supposed to comply with. How do you respond to Mr. Percelli's attempt to distinguish few homeowners by, as I understood his argument, by saying that that case had very specific design standards and a detailed contract? How do you respond to that? Sure, Your Honor. I don't believe it did. In that case, what the court found is, well, there was a contract with the Industrial Expansion Authority to remunerate or remunerate a blighted area by constructing these condominium units. That's the sum total of what's alleged or found with regard to that agreement. And then it also said that there were, of course, sale contracts to individual condominium units. And it's cited specifically in the opinion that that involved the implied duties that go along with that, which I presume would be the implied duty of habitability and those sorts of things. So I don't believe that there's any finding or conclusion in view that there were certain specified ANSI standards or things of that nature that the contractor failed to live up to in performing under the project. You know, instead, that's another case where, you know, we have a contractor who engages in shoddy work, wants to find coverage under the policy, and the court determines there isn't because that contractor, that insured had control over that project from the beginning to end of the project. And what I read to the court at the beginning is, I think, one of the critical findings is that because of that, that insured had the ability to control the outcome, to correct deficiencies, and to correct problems of the project as it went along. Whereas I think in a lot of these other cases, that's not the case, or there are other parties involved that the general contractor doesn't necessarily have direct control over their performance. The Koch case decided by this court, there was a finding of recklessness by the district court in that case. And so then the court went down in analyzing recklessness as a subspecies of negligence, and looked at the Pichetti case, Missouri Supreme Court case that deals with recklessness, or actually deals with the intentional acts exception, or exclusion to coverage, and deals with the recklessness issue. We don't have recklessness here. I don't think Koch really applies, but even if it did, I think the district court opinion in that case agreed that breach of contract is not covered. So I don't think it has a real direct application to these facts in this case. So what we're left dealing with here is looking at what Missouri says is an accident, and under Missouri law, that is something that happens by chance, it's fortuitous, it's without intent or design, it's unexpected, unusual, and unforeseen. And the Missouri courts have made clear that breach of defined contractual duties are not an accident, and that is precisely what we have here. Mid-American agreed to build and deliver, design, build, and deliver a state-of-the-art grain facility in Layton Bower. That is a defined contractual duty. That is borne out by what's pleaded in the counterclaim in detail there. So there just simply isn't really any doubt in our view that this case is a pure breach of contract claim. The negligence claims that are alleged in the counterclaims are based on the same identical acts and facts as the breach of contract claim. Again, the very same things that are alleged to be a breach of contract are contended to also be negligence. So we don't have anything there alleged that's outside of the scope of Mid-American's control. And so what I would argue to the court here is most important, is sort of where I started, and that is with respect to the fact that Mid-American had control over this project. It controlled the design, it controlled the build, it controlled its ability to fix or which are very specific defects and very specific violations of the contract. That is the only way to read the counterclaim. And that's what we're looking at here is, is what is alleged, does it fall within the scope of coverage? And under Missouri law, which requires an occurrence to be an accident, and in view of the case law that holds contractors who are in control of a property and a project are not committing an accident when they fail to perform and engage in shoddy workmanship. Thank you, Your Honors. Thank you, Mr. Graham. Judge Shepard, yes. Strangely enough, I think the answer to your question is yes, it is recognized and the Missouri courts have recognized that negligence of an insured can be and is an occurrence under Missouri law. All of the cases that both of us discuss are poor workmanship cases. It can't begin and end there. The analysis just can't stop there. The issue I think this court has to wrestle with is when is the claim against a contractor really a negligence claim or really a contract claim? And first, I would say that the Missouri courts most definitely are heading toward and apply the foreseeability test is one of the ways to decide that. And the Supreme Court said as late as 2013, this court has addressed the question of whether particular events are, quote, accidents, quote, under liability insurance policies. The key question in such cases is whether the insured foresaw or expected the injury or damages. That's the Home Depot case at 404 Southwest 3rd 220. The D.R. Sherry case, it is a defective workmanship case. The liability policy there, like every liability policy, only kicked in if the insured was legally obligated to pay the damages. In that case, the contractor, when presented with the complaints of the homeowner, bought the house, repurchased the house from the homeowner and the contractor, quote, introduced evidence showing that the home inadvertently was constructed on soil that was incapable of providing adequate support and that as a result of this unforeseeable circumstance, the home was damaged. In other words, the contractor was negligent. He built the home. And again, that case was in which case was that again? That's the D.R. Sherry case, Your Honor. Right. Yes, the affidavit of error was drafted and it was self, I guess, could be construed or characterized as self-serving, but American Family had a team of experts in the underlying case and certainly could have provided its own experts affidavits saying, no, no, no, you could foresee that. But they didn't. They didn't do that. And yes, there are allegations about third-party manufacturers' specifications, but those were never made part of any contract between Lanebauer, no written contract between Lanebauer and Ayer. Those, I would say, establish the standard of care that applied to Ayer, the standard he should have followed when he was designing and when he was building this facility. We'd ask that the court reverse the district court's ruling. Very well. Thank you, counsel. We appreciate your appearance and arguments today. The case is submitted and we will decide it in due course.